## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GLORIA NIEVES and EMILIO NIEVES, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Number:  06-123 (GMS) |
| ACME MARKETS, INC., a Delaware corporation | : | |
| d/b/a Acme Markets No. 7816, ACME MARKETS, | : | JURY TRIAL DEMANDED |
| INC., a Delaware Corporation d/b/a Acme Markets | : | |
| No. 7836, ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation, d/b/a Acme Markets No. 7816, | : | |
| ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation d/b/a Acme Markets No. 7836, | : | |
| | : | |
| Defendants. | : | |

### DEFENDANT'S PROPOSED POINTS FOR CHARGE

Defendant Acme Markets, Inc. submits the Defendant's Proposed Points for

Charge.  Defendant respectfully reserves the right to amend and/or to supplement the points for

charge at the close of the evidence.  Defendant also anticipates that the Court's ruling on the

Motion for Summary Judgment and other pretrial rulings will necessitate amendments.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY P.C.

JENNIFER M. BECNEL-GUZZO (No. 4492)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
jennifer.becnelguzzo@ bipc.com

and

ELIZABETH A. MALLOY (*pro hac vice*)
BUCHANAN INGERSOLL & ROONEY P.C.
1835 Market Street, 14th Floor
Philadelphia, PA 19103
(215) 665-8700

Attorneys for Defendant,
Acme Markets, Inc.

## TABLE OF CONTENTS

Joint Proposed Instruction No 1:  Introduction..................................................................................1

Joint Proposed Instruction No. 2:  Multiple Plaintiffs ......................................................................3

Joint Proposed Instruction No. 3:  Evidence Defined........................................................................4

Joint Proposed Instruction No. 4:  Consideration of Evidence .........................................................5

Joint Proposed Instruction No 5:  Burden of Proof; Preponderance of the Evidence........................6

Joint Proposed Instruction No. 6:  Direct and Circumstantial Evidence ...........................................7

Joint Proposed Instruction No. 7:  Direct Evidence Not Required ....................................................8

Joint Proposed Instruction No. 8:  All Available Evidence ...............................................................9

Joint Proposed Instruction No. 9:  Expert Testimony......................................................................10

Joint Proposed Instruction No. 10:  Number of Witnesses ..............................................................11

Joint Proposed Instruction No. 11:  Testimony By Deposition ........................................................12

Joint Proposed Instruction No. 12:  Charts and Summaries ............................................................13

Joint Proposed Instruction No. 13:  Credibility of Witnesses..........................................................14

Joint Proposed Instruction No. 14:  Impeachment by Prior Inconsistent Statement ........................16

Joint Proposed Instruction No. 15:  Statements of Counsel.............................................................17

Joint Proposed Instruction No. 16:  Stipulations ...........................................................................18

Joint Proposed Instruction No. 17:  Plaintiff's Prima Facie Case of a Racially Hostile
Work Environment............................................................................................................................19

Joint Proposed Instruction No. 18:  Pervasiveness Required ..........................................................20

Joint Proposed Instruction No. 19:  Reasonable Person Standard ...................................................21

Joint Proposed Instruction No. 20:  Respondeat Superior Liability - Co-Worker Harassment.........22

Joint Proposed Instruction No. 21:  Exhaustion of Administrative Remedies ..................................23

Joint Proposed Instruction No. 22:  Elements of Constructive Discharge..........................................24

Joint Proposed Instruction No. 23:  Plaintiff's Prima Facie Case for National Origin Discrimination.............................................................................................................25

Joint Proposed Instruction No. 24:  Materially Adverse Employment Action.................................26

Joint Proposed Instruction No. 25:  Burden-Shifting.......................................................................27

Joint Proposed Instruction No. 26:  National Origin Must Be a Determinative Factor....................28

Joint Proposed Instruction No. 27:  Plaintiff's Prima Facie Case of Retaliation .............................29

Joint Proposed Instruction No. 28:  Materially Adverse Employment Action for Retaliation Claim ........................................................................................................30

Joint Proposed Instruction No. 29:  Burden-Shifting.......................................................................31

Joint Proposed Instruction No. 30:  Retaliation Must Be a Determinative Factor ...........................32

Joint Proposed Instruction No. 31:  Intentional Infliction of Emotional Distress ............................33

Joint Proposed Instruction No. 32:  Breach of the Covenant of Good Faith and Fair Dealing ........34

Joint Proposed Instruction No. 33:  Loss of Consortium..................................................................35

Joint Proposed Instruction No. 34:  Effect of Instruction As To Damages .......................................36

Joint Proposed Instruction No. 35:  Back Pay Award ......................................................................37

Joint Proposed Instruction No. 36:  Emotional Suffering.................................................................38

Joint Proposed Instruction No. 37:  Punitive Damages ....................................................................39

Joint Proposed Instruction No. 38:  Attorney's Fees.........................................................................40

Joint Proposed Instruction No. 39:  Deliberation and Verdict..........................................................41

Joint Proposed Instruction No 1:  Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

See Sample Miscellaneous Jury Instructions, webpage of Sleet, J.

Joint Proposed Instruction No. 2:  Multiple Plaintiffs

Although there are two plaintiffs in this action, it does not follow from that fact alone that if one plaintiff is entitled to recover, both are entitled to recover.  The defendant is entitled to a fair consideration as to each plaintiff, just as each plaintiff is entitled to a fair consideration of that plaintiff's claim against the defendant.  Unless otherwise stated, all instructions I give you govern the case as to each plaintiff.

<u>Joint Proposed Instruction No. 3:  Evidence Defined</u>

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked.  I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

<u>Joint Proposed Instruction No. 4:  Consideration of Evidence</u>

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

Joint Proposed Instruction No 5:  Burden of Proof; Preponderance of the Evidence

This is a civil case.  Plaintiff has the burden of proving his and her claims and damages by what is called a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not plaintiff has met his and her burden of proof on various issues.

See Sample Miscellaneous Jury Instructions, webpage of Sleet, J.

6

<u>Joint Proposed Instruction No. 6:  Direct and Circumstantial Evidence</u>

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it way that one is any better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

<u>Joint Proposed Instruction No. 7:  Direct Evidence Not Required</u>

In a national origin discrimination and retaliation case such as this, an employee does not have to prove discrimination or retaliation through direct evidence.  Intentional discrimination or retaliation may be inferred from the existence of other facts.  The law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 113 S. Ct. 2742 (1993); <u>see also</u>, O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, 5th Ed., § 101.42 (taken in modified form.)

Joint Proposed Instruction No. 8:  All Available Evidence

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

See Federal Jury Practice and Instructions, § 105.11.

<u>Joint Proposed Instruction No. 9:  Expert Testimony</u>

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

<u>Joint Proposed Instruction No. 10: Number of Witnesses</u>

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

<u>Joint Proposed Instruction No. 11:  Testimony By Deposition</u>

During the trial, certain evidence was presented to you by the reading of depositions.  A deposition is a record of the sworn testimony of witnesses taken before an authorized person. All parties and their attorneys had the right to attend and to examine and cross-examine the witnesses.

This evidence is entitled to the same consideration as you would give the same testimony had the witness testified in Court.

<u>Joint Proposed Instruction No. 12:  Charts and Summaries</u>

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

<u>See</u> 3 Levin F. O'Malley, et al., Federal Jury Practice and Instructions § 104.50 (5th ed. 2000).

<u>Joint Proposed Instruction No. 13:  Credibility of Witnesses</u>

You are the sole judges of each witness's credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

See Sample Miscellaneous Jury Instructions, webpage of Sleet, J.

Joint Proposed Instruction No. 14:  Impeachment by Prior Inconsistent Statement

You may have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness' testimony at trial.  Evidence of such a prior inconsistent statement is to be used for the limited purpose of determining whether the trial testimony of the witness is credible.  If you find that a witness made an earlier statement which conflicts with the trial testimony you may consider that fact in deciding how much of the witness' testimony you believe.  It is for you to decide whether the prior statement is, in fact, inconsistent, and if so, how much weight is to be given it.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

<u>Joint Proposed Instruction No. 15:  Statements of Counsel</u>

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

<u>See</u> <u>Sample Miscellaneous Jury Instructions</u>, webpage of Sleet, J.

Joint Proposed Instruction No. 16:  Stipulations

Statements and arguments are not evidence in the case, unless made as an admission or stipulation of fact.  When a fact is stipulated to by counsel on both sides, then the law deems that fact to be true for the purposes of the case, and you should accept that fact as established for your purposes.

<u>Joint Proposed Instruction No. 17:  Plaintiff's Prima Facie Case of a Racially Hostile Work Environment</u>

Ms. Nieves claims that she was subjected to harassment by her coworkers and that this harassment was motivated by her national origin.  In order to prove her hostile work environment claim, Ms. Nieves has an initial burden of establishing by a preponderance of the evidence (1) that she suffered intentional discrimination because of her national origin; (2) that the discrimination was severe or pervasive; (3) that she was detrimentally affected by the discrimination; (4) that a reasonable person of the same national origin as her, in a like position, would have been detrimentally affected by the harassment; and (5) a basis for respondeat superior liability.  The parties do not agree whether Ms. Nieves has established any of the elements of her hostile work environment claim.

<u>Arasteh v. MBNA Bank</u>, 146 F. Supp. 2d 476, 494 (D. Del. 2001); <u>Washington v. Autozoners, Inc.</u>, 452 F. Supp. 2d 546, 553 (D. Del. 2006); <u>Petrocelli v. DaimlerCrystler Corp.</u>, No. Civ.A. 04-943-KAJ. 2006 WL  733567, at *4 (D. Del. Mar. 22, 2006).

<u>Joint Proposed Instruction No. 18:  Pervasiveness Required</u>

Ms. Nieves' hostile work environment claims must be judged by the totality of the circumstances and not on an incident-by-incident approach.  Thus, in order to prove her claim of a hostile work environment, Ms. Nieves must demonstrate that her work environment was "permeated" with intentional and discriminatory intimidation, ridicule, or insult based on her national origin that was "sufficiently severe or pervasive…to create an abusive working environment."  Acme cannot be held liable for conduct that is merely offensive or annoying. Offhand comments and isolated incident (unless extremely serious) are not sufficiently severe and pervasive.  Rather, Ms. Nieves must prove that Acme's conduct "alter[ed] the terms and conditions of [her] employment."

<u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998); <u>West v. Phila. Elec. Co.</u>, 45 F.3d 744, 755 (3d Cir. 1995).

Joint Proposed Instruction No. 19:  Reasonable Person Standard

Ms. Nieves must establish by a preponderance of the evidence that she was subjected to a working environment that a reasonable person would find hostile or abusive.  If you find that the working environment that Ms. Nieves encountered would not be perceived as hostile or abusive by a reasonable person of the same national origin in a like position, or that Ms. Nieves did not perceive it that way, you must find in favor of Acme.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

<u>Joint Proposed Instruction No. 20:  Respondeat Superior Liability - Co-Worker Harassment</u>

An employer is not automatically liable for harassment in the workplace.  As Ms. Nieves

claims that she was harassed by her coworkers, she must also establish by a preponderance of the

evidence that management level employees knew or should have known of the harassment and

failed to take prompt remedial action.  Management level employees should have known of the

abusive conduct if (1) an employee provided management level personnel with enough

information to raise a probability of national origin harassment in the mind of a reasonable

employer, or it (2) the harassment was so pervasive and open that a reasonable employer would

have had to be aware of it.  If Ms. Nieves is unable to establish both that Acme knew or should

have known of harassment by Ms. Nieves' coworkers <u>and</u> that Acme failed to take prompt

remedial action, Acme may not be held liable for harassment.

<u>See</u> Court of Appeals for the Third Circuit, <u>Model Civil Jury Instructions for Employment
Discrimination Claims Under Title VII</u>, at page 23 (taken in modified form); <u>Andrews v. City of
Phila.</u>, 895 F.3d 1469, 1486 (3d Cir. 1990).

<u>Joint Proposed Instruction No. 21:  Exhaustion of Administrative Remedies</u>

Ms. Nieves has alleged a claim of constructive discharge.  Before you can consider on the merits whether Ms. Nieves has established that she was forced to resign due to Acme's discriminatory and retaliatory conduct, you must answer a preliminary question.  In order for Ms. Nieves to proceed with her constructive discharge claim, Ms. Nieves must prove by a preponderance of the evidence either (1) that she asserted her claim of constructive discharge to an administrative agency, in this case, the Delaware Department of Labor, or (2) that her claim of constructive discharge falls within the scope of a prior complaint to the Delaware Department of Labor or the investigation that arose out of it.  The parties do not agree that Ms. Nieves has established either of these factors.

<u>See</u> <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996); <u>Waiters v. Parsons</u>, 729 F.2d 233 (3d Cir. 1984).

Joint Proposed Instruction No. 22:  Elements of Constructive Discharge

Ms. Nieves claims that she was forced to resign due to Acme's discriminatory and

retaliatory conduct.  Such a forced resignation, if proven is called a "constructive discharge."  To

hold Acme liable for Ms. Nieves' decision to resign, Ms. Nieves has an initial burden of

establishing by a preponderance of the evidence (1) that Acme intentionally made working

conditions so intolerable that a reasonable person would be forced to resign; note that mere

dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or

unpleasant working conditions are not necessarily so intolerable as to compel a person to resign;

(2) that Ms. Nieves' national origin and/or her complaints about the hostile work environment

were a motivating factor in Acme's conduct; and (3) that Ms. Nieves resigned from her position.

The parties both agree that Ms. Nieves has met the third element; that is that she resigned from

her position with Acme.  You will have to decide whether Ms. Nieves has met the other

elements; that is that Acme intentionally made working conditions so intolerable that a

reasonable person would be forced to resign and that Ms. Nieves' national origin and/or her

complaints about the hostile work environment were a motivating factor in Acme's conduct.

See Court of Appeals for the Third Circuit, Model Civil Jury Instructions for Employment
Discrimination Claims Under Title VII, at page 40 (taken in modified form).

<u>Joint Proposed Instruction No. 23:  Plaintiff's Prima Facie Case for
National Origin Discrimination</u>

Ms. Nieves claims that she was discriminated against on the basis of national origin when

Acme suspended her for one week and transferred her to the Smyrna store.  In order to prove her

national origin discrimination claim, Ms. Nieves has an initial burden of establishing by a

preponderance of the evidence (1) that she is Hispanic; (2) that she was qualified to be a Deli

Clerk for Acme; (3) that she was suspended for one week and transferred to the Smyrna store;

(4) that the transfer was an adverse employment action; and (5) that the circumstances which led

to her suspension and transfer give rise to an inference of unlawful discrimination, such as might

occur when a similarly situated person not of the protected class is treated differently.  The

parties both agree that Ms. Nieves has met the first three elements; that is, they agree that Ms.

Nieves is Hispanic; that she was qualified to be a Deli Clerk; and that she was suspended for one

week and transferred to the Smyrna store.  You will have to decide whether Ms. Nieves has met

the other two requirements; that is, you will have to decide whether the transfer to Smyrna was

an adverse employment action and whether Ms. Nieves was treated differently than other

similarly situated persons not of the protected class (as to the suspension and the transfer) so as

to give rise to an inference of discrimination.

<u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997); <u>Fuentes v. Perskie</u>, 32
F.3d 759, 763 (3d Cir. 1994); <u>Ezold v. Wolf, Block, Schorr and Solis-Cohen</u>, 983 F.2d 509, 522
(3d Cir. 1992), cert. denied, 114 S.Ct. 88 (1993).

<u>Joint Proposed Instruction No. 24:  Materially Adverse Employment Action</u>

Ms. Nieves has the burden of proving that she suffered a materially adverse employment action.  A materially adverse employment action is one which is serious enough to alter the compensation, terms, conditions or privileges of employment.  Purely lateral transfer do not constitute a materially adverse employment action.  To be materially adverse, an employment action must not arise from the employee's own individual preferences for one job over another.

If you find that plaintiff's transfer to the deli clerk position at the Smyrna store had no economic impact on her and was not, objectively, a less important position, you must find for Acme on plaintiff's claim that she was discriminated against by her transfer.

<u>Burlington Indust., Inc. v. Ellerth</u>, 524 U.S. 742, 749 S.Ct. 2257 (1998); <u>Fallon v. Messner</u>, 2003 U.S. App. LEXIS 8277 (3d Cir. 2003).

<u>Joint Proposed Instruction No. 25:  Burden-Shifting</u>

If Ms. Nieves is able to meet her burden of establishing the initial elements for national

origin discrimination, the burden then shifts to Acme to articulate a legitimate, nondiscriminatory

reason or reasons for its actions.  If Acme's evidence creates a genuine issue of fact, then, Ms.

Nieves must prove, by a preponderance of the evidence, that the reason or reasons that Acme

gives for its actions were a pretext or cover-up for intentional national origin discrimination.

<u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Jones v. School Dist. of Phila</u>.,
198 F.3d 403, 410 (3d Cir. 1999); <u>Krouse v. Am. Sterlizer Co</u>., 126 F.3d 494, 500-501 (3d Cir.
1997).

Joint Proposed Instruction No. 26:  National Origin Must Be a Determinative Factor

    In order to prevail, Ms. Nieves must prove that her national origin was more likely than not a determinative factor in Acme's employment actions.  Ms. Nieves is <u>not</u> required to prove that discrimination was the <u>only</u> reason for Acme's actions, or even that discrimination was the <u>main</u> cause of Ms. Nieves' suspension and transfer.  You may find Acme liable even if you find that there were other causes for Acme's actions in addition to national origin discrimination.  For you to decide that discrimination was a determinative factor in Acme's actions, Ms. Nieves needs to have proven that national origin discrimination played a role in the decision-making process and that it had a determinative influence on the outcome of that process.

<u>Miller v. Cigna Corporation</u>, 47 F.3d 586, 594-597 (3d Cir. 1995).

28

Joint Proposed Instruction No. 27:  Plaintiff's Prima Facie Case of Retaliation

Ms. Nieves claims she was retaliated against for her complaints of a hostile work environment when she was suspended for one week and transferred to the Smyrna store.  In order to prove her retaliation claim, Ms. Nieves has an initial burden of establishing by a preponderance of the evidence (1) she engaged in activity protected by Title VII; (2) she was subjected to a materially adverse action at the time, or after, the protected conduct took place; and (3) there was a causal connection between her protected activity and the actions taken by Acme.  The parties do not agree that any of these elements have been met.  You will have to decide whether Ms. Nieves complained about harassment, whether the suspension and transfer were materially adverse employment actions, and whether there was a causal connection between Ms. Nieves' protected activity and her suspension and transfer to the Smyrna store.

See Court of Appeals for the Third Circuit, Model Civil Jury Instructions for Employment Discrimination Claims Under Title VII, at page 30 (taken in modified form).

<u>Joint Proposed Instruction No. 28:  Materially Adverse Employment Action</u>
<u>for Retaliation Claim</u>

Ms. Nieves has the burden of proving that she suffered a materially adverse employment action.  A materially adverse employment action for purposes of her retaliation claim means an action which would have dissuaded a reasonable worker from making a complaint about discrimination.  If you find that Plaintiff's transfer to Smyrna and suspension was not materially adverse, you must find for Acme on this retaliation claim.

<u>See</u> <u>Burlington Northern and Santa Fe Railway Company</u>, 126 S.Ct. 2405, 2414-25 (2006).

<u>Joint Proposed Instruction No. 29:  Burden-Shifting</u>

If Ms. Nieves is able to meet her burden of establishing the initial elements for

retaliation, the burden then shifts to Acme to articulate a legitimate, nondiscriminatory reason or

reasons for its actions.  If Acme's evidence creates a genuine issue of fact, then Ms. Nieves must

prove, by a preponderance of the evidence, that the reason or reasons that Acme gives for its

actions were a pretext or cover-up for retaliation.

<u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Jones v. School Dist. of Phila.</u>,
198 F.3d 403, 410 (3d Cir. 1999); <u>Krouse v. Am. Sterlizer Co.</u>, 126 F.3d 494, 500-501 (3d Cir.
1997).

<u>Joint Proposed Instruction No. 30:  Retaliation Must Be a Determinative Factor</u>

In order to prevail, Ms. Nieves must prove that her complaints about discrimination (if you find she did complain) were more likely than not a determinative factor in Acme's employment actions.  Ms. Nieves is <u>not</u> required to prove that retaliation was the <u>only</u> reason for Acme's actions, or even that retaliation was the <u>main</u> cause of Ms. Nieves' suspension and transfer.  You may find Acme liable even if you find that there were other causes for Acme's actions in addition to retaliation.  For you to decide that retaliation was a determinative factor in Acme's actions, Ms. Nieves needs to have proven that retaliation played a role in the decision-making process and that it had a determinative influence on the outcome of that process.

<u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 935 (3d Cir. 1997).

Joint Proposed Instruction No. 31:  Intentional Infliction of Emotional Distress

Ms. Nieves claims that Acme has intentionally inflicted emotional distress upon her.  In order to prove her intentional infliction of emotional distress claim, Ms. Nieves has the initial burden of establishing by a preponderance of the evidence that (1) Acme's conduct was extreme and outrageous; (2) Acme's conduct was intentional or reckless; (3) she suffered emotional distress as a result of Acme's conduct; and (4) the emotional distress was severe.  For purposes of this definition, Acme's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  The parties do not agree whether Ms. Nieves has established any of the elements of her intentional infliction of emotional distress claim.

Collins v. African Methodist Episcopal Zion Church, C.A. No. 04C-02-121, 2006 WL 1579828, at *10 (Del. Super. Mar. 29, 2003).

Joint Proposed Instruction No. 32:  Breach of the Covenant of Good Faith and Fair Dealing

Ms. Nieves claims that Acme has breached the covenant of good faith and fair dealing by terminating her employment in violation of public policy.  In order to prove that Acme terminated her employment in violation of public policy, Ms. Nieves has the initial burden of establishing by a preponderance of the evidence that (1) a termination of employment occurred; (2) a public interest exists that is recognized by some legislative, administrative or judicial authority; and (3) she occupied a position with responsibility for advancing or sustaining this particular interest.  The parties do not agree whether Ms. Nieves has established any of the elements of this claim.

EEOC v. Acecia, Inc., 151 Fed. Appx. 162, 165 (3d Cir. 2005); Cole v. Del. Tech. & Cmty. Coll., 459 F. Sup.. 2d 296 (D. Del. 2006).

<u>Joint Proposed Instruction No. 33:  Loss of Consortium</u>

If you find that Ms. Nieves has proved either her claim of intentional infliction of emotional distress or her claim of breach of the covenant of good faith and fair dealing, then you must determine if Mr. Nieves, Ms. Nieves' husband, has also been injured because of harm caused to his wife by Acme.  To recover for the loss of consortium, services and/or companionship of his spouse, Mr. Nieves must prove by a preponderance of the evidence that (1) he was married to Ms. Nieves at the time the injury occurred; (2) as a result of the injury, he was deprived of some sort of benefit which formerly existed in the marriage; and (3) Ms. Nieves has a valid cause of action against Acme.  The parties both agree that Mr. Nieves has met the first element; that is, they agree that Mr. Nieves was married to Ms. Nieves during the period in which she was employed by Acme.  You will have to decide whether Mr. Nieves has met the other two requirements; that is, you will have to decide whether Mr. Nieves has been deprived of the consortium, services and/or companionship of his wife and whether Ms. Nieves has a valid cause of action against Acme for intentional infliction of emotional distress or breach of the covenant of good faith and fair dealing.  If you find in the negative on either of these two elements, then you must find for Acme on this claim.

<u>Jones v. Elliott</u>, 551 A.2d 62, 63-64 (Del. 1988); <u>Petrocelli v. Daniel Woodhead Co.</u>, 993 F.2d 27, 30 (3d Cir. 1993).

<u>Joint Proposed Instruction No. 34:  Effect of Instruction As To Damages</u>

The fact that I will instruct you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of either plaintiff from a preponderance of the evidence in the case in accordance with the other instructions.

<u>See</u> Federal Jury Practice and Instructions, § 106.02.

Joint Proposed Instruction No. 35:  Back Pay Award

If you find that Acme intentionally discriminated against Ms. Nieves because of her national origin, you must determine the amount of damages that Ms. Nieves has sustained.  In determining damages, you may award her back pay in an amount equal to the total compensation that she would have received from Acme if she had not been subjected to discrimination, subtracting any compensation she actually earned or should have earned in mitigation of her damages and exercised reasonable diligence in seeking substantially equivalent employment. Back pay damages, if any, apply until the date of your verdict.

The purpose of awarding back pay damages is strictly to compensate a party for actual losses, and not to punish the defendant or to provide a windfall for the plaintiff.

Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273-75 (4th Cir. 1985).  See also O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, 5th Ed., § 173.70

37

<u>Joint Proposed Instruction No. 36:  Emotional Suffering</u>

In addition to awarding Ms. Nieves damages for past emotional distress, you may also award her damages for future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-monetary losses caused to Ms. Nieves as a consequence of Acme's wrongful conduct.  To recover such emotional damages, Ms. Nieves must show an actual injury and a reasonable probability, rather than a mere possibility, that damages were a result of Acme's unlawful conduct.  In this regard, Ms. Nieves is not required to establish the monetary value of such anguish.  No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award you make for such suffering should simply be fair in light of the evidence presented at trial concerning the nature of the wrongful conduct.  Such award, if any, must be limited to those sums necessary to compensate Ms. Nieves for actual harm.

<u>Gagliardo v. Connaught Laboratories, Inc.</u>, 311 F.3d 565 (3d Cir. 2002); <u>Vance v. Southern Bell Tel. & Tel. Co.</u>, 863 F2d 1503, 1516 (11th Cir. 1989).

<u>Joint Proposed Instruction No. 37:  Punitive Damages</u>

Ms. Nieves claims that the acts of Acme were done with malice or reckless indifference to her federally protected rights and that, as a result, there should be an award of punitive damages.  A jury may, but is not required to, award punitive damages to punish a defendant or to deter the defendant and others like the defendant from committing such conduct in the future. An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Acme willfully discriminated or retaliated against Ms. Nieves.

But even if you make a finding that there has been an act of willful discrimination or retaliation by Acme, you cannot award punitive damages if Acme proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting polices and procedures designed to prevent unlawful discrimination and retaliation such as that suffered by Ms. Nieves.

If you have found elements permitting punitive damages, then you should consider the purposes of punitive damages in determining the amount of damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which Acme should be punished for its wrongful conduct and the degree to which an award of one sum or another will deter Acme or others from committing similar wrongful acts in the future.

<u>See</u> Court of Appeals for the Third Circuit, Model Civil Jury Instructions for Employment Discrimination Claims Under Title VII, at page 51 (taken in modified form).

<u>Joint Proposed Instruction No. 38:  Attorney's Fees</u>

In assessing damages, you should not concern yourself with the attorney's fees or other expenses occurred by Ms. Nieves and Mr. Nieves.  That is a matter for the court to consider after the trial is concluded.

## Joint Proposed Instruction No. 39:  Deliberation and Verdict

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict.  Remember at all times that you are not partisans.

You are judges – judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in that case.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence.  Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer.  The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone else how you stand on your votes.  For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented.

See Sample Miscellaneous Jury Instructions, webpage of Sleet, J.

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

GLORIA NIEVES and EMILIO NIEVES,  :  CIVIL ACTION
               :
    Plaintiffs,  :
               :
    v.          :
               :  Number: 06-123 (GMS)
ACME MARKETS, INC., a Delaware corporation :
d/b/a Acme Markets No. 7816, ACME MARKETS, :  JURY TRIAL DEMANDED
INC., a Delaware Corporation d/b/a Acme Markets :
No. 7836, ACME MARKETS, INC., a Pennsylvania :
Corporation, d/b/a Acme Markets No. 7816, :
ACME MARKETS, INC., a Pennsylvania  :
Corporation d/b/a Acme Markets No. 7836,  :
               :
         Defendants. :

## CERTIFICATE OF SERVICE

I, Jennifer M. Becnel-Guzzo, hereby certify that on May 29, 2007, I electronically filed

Defendant's Proposed Points for Charge with the Clerk of Court using CM/ECF and also served

two copies, via first class mail, postage prepaid, to:

> Gloria and Emilio Nieves
> 625 Village Drive
> Middletown, DE  19709

BUCHANAN INGERSOLL & ROONEY PC

BY: _Jennifer M. Becnel-Guzzo_
   Jennifer M. Becnel-Guzzo (#4492)
   1000 West Street, Suite 1410
   Wilmington, DE 19801
   (302) 552-4200
   jennifer.becnelguzzo@bipc.com
May 29, 2007   Attorneys for Defendant Acme Markets, Inc.

#2031707-v3         43