## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GLORIA NIEVES and EMILIO NIEVES, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Number: 06-123 (GMS) |
| ACME MARKETS, INC., a Delaware corporation | : | |
| d/b/a Acme Markets No. 7816, ACME MARKETS, | : | JURY TRIAL DEMANDED |
| INC., a Delaware Corporation d/b/a Acme Markets | : | |
| No. 7836, ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation, d/b/a Acme Markets No. 7816, | : | |
| ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation d/b/a Acme Markets No. 7836, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE DDOL'S MARCH 18, 2005 LETTER TO DEFENDANT AND FINAL DETERMINATION AND RIGHT TO SUE NOTICE

JENNIFER M. BECNEL-GUZZO (No. 4492)
BUCHANAN INGERSOLL & ROONEY PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
jennifer.becnelguzzo@bipc.com

and

ELIZABETH A. MALLOY *(admitted pro hac vice)*
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street
14th Floor
Philadelphia, PA 19103
(215) 665-8700

Attorneys for Defendant,
Acme Markets, Inc.

Dated: May 22, 2007

## TABLE OF CONTENTS

**PAGE**

I.    PROCEDURAL HISTORY............................................................................................1

II.   SUMMARY OF ARGUMENT ....................................................................................1

III.  INTRODUCTION AND RELEVANT FACTS .........................................................1

IV.  ARGUMENT ...............................................................................................................2

V.   CONCLUSION............................................................................................................5

# TABLE OF AUTHORITIES

## CASES                                                                                PAGE(S)

Burris v. Richards Paving, Inc.,
461 F. Supp. 2d 244 (D. Del. 2006).................................................................2

Coleman v. Home Depot, Inc.,
306 F. 3d 1333 (3d Cir. 2002)................................................................2, 3, 4

El v. SEPTA,
479 F.3d 232 (3d Cir. 2007)........................................................................2

In the Matter of the Complaint of Nautilus Motor Tanker Co., Ltd.,
85 F.3d 105 (3d Cir. 1996).........................................................................2

Spruill v. Winner Ford of Dover, Ltd.,
175 F.R.D. 194 (D. Del. 1997) ..................................................................2, 3

Whitfield v. Pathmark Stores, Inc.,
1999 WL 222459 (D. Del. 1999).....................................................................4


## RULES

Fed. Rule Evid. 403 .............................................................................1, 2, 4

Fed. R. Evid. 801, 802 ..........................................................................1, 2, 3

Fed. R. Evid. 803(8)(C) .........................................................................1, 2, 3

## I.    PROCEDURAL HISTORY

On or about February 28, 2006, plaintiffs Gloria Nieves and Emilio Nieves ("plaintiffs") filed a complaint against defendant Acme Markets, Inc. ("defendant" or "Acme") in federal district court. Mrs. Nieves alleges, among other things, a hostile environment based on her national origin, constructive discharge, retaliation, wrongful termination, and intentional infliction of emotional distress. Plaintiff Emilio Nieves, Mrs. Nieves' husband, alleges loss of consortium. Defendant moved for summary judgment on February 1, 2007, which motion is pending before this District Court. The matter is currently ready to proceed to trial.

## II.    SUMMARY OF ARGUMENT

At trial, plaintiffs seek to admit the findings of the Delaware Department of Labor into evidence. Both the DDOL Final Determination and Right to Sue Notice as well as the DDOL's March 18, 2005 letter to Acme should be excluded from trial because:

1. Both documents are inadmissible hearsay under Rule 801 and Rule 802, and do not fall within the Rule 803(8)(C) hearsay exception because they lack trustworthiness; and

2. Both documents are significantly more prejudicial than probative under Rule 403.

## III.    INTRODUCTION AND RELEVANT FACTS

Prior to filing the instant lawsuit, Mrs. Nieves filed a Charge with the Delaware Department of Labor ("DDOL"). The DDOL sent a letter to Acme on March 18, 2005 indicating its intent to issue a Cause Finding ("March 18 Letter") (March 18 Letter, Ex. A), and subsequently issued a Final Determination and Right to Sue Notice on March 31, 2005 ("DDOL Determination"). DDOL Determination, Ex. B. Plaintiffs now seek to admit both the March 18 Letter and the DDOL Determination into evidence. Neither document is admissible under the hearsay and relevancy rules of the Federal Rules of Evidence, and should be excluded from trial.

## IV.    __ARGUMENT__

Government records and reports, such as EEOC determinations, are not per se admissible. Coleman v. Home Depot, Inc., 306 F. 3d 1333 (3d Cir. 2002). For example, a state or federal determination is not admissible under the public records hearsay exception to the hearsay rule, Fed. R. Evid. 803(8)(C), if it is not based on a factual investigation or if it is not sufficiently trustworthy. In the Matter of the Complaint of Nautilus Motor Tanker Co., Ltd., 85 F.3d 105, 112 (3d Cir. 1996). The report is further excludable if it is substantially more prejudicial than probative under the relevancy rule, Fed. Rule Evid. 403. El v. SEPTA, 479 F.3d 232, 248 n.19 (3d Cir. 2007). Whether to admit or exclude a determination by a federal or state agency is within the discretion of the trial judge. Spruill v. Winner Ford of Dover, Ltd., 175 F.R.D. 194 (D. Del. 1997).[1]

Initially, in Burris v. Richards Paving, Inc., this Court precluded all testimony and evidence relating to the DDOL's findings, reasoning that "as a matter of practice, this court regards documents such as the DDOL's Notice of Reasonable Cause Finding as inadmissible hearsay." 461 F. Supp. 2d 244, 251 n.9 (D. Del. 2006). If a matter of practice is insufficient for the Court, Acme requests the DDOL Determination and supporting March 18 Letter be excluded for two reasons: 1) both documents are inadmissible hearsay under Rule 801 and Rule 802, and do not fall within the Rule 803(8)(C) hearsay exception because they lack trustworthiness; and 2) both documents are significantly more prejudicial than probative under Rule 403.

Both the March 18 Letter and the DDOL Determination are clearly hearsay under Rule 801 and Rule 802, as both the letter and the determination are statements not made by the declarant and are offered to prove the truth of the matter. Fed. R. Evid. 801, 802. Because both documents constitute public records by a state agency, a Rule 803(8)(C) analysis must be

---

[1] All decisions which are not reported in official reporters are attached in alphabetical order as Ex. C.

conducted.  In engaging in a trustworthiness analysis, courts look to factors such as "the special skill or experience of the official, whether a hearing was held, and possible bias when reports are prepared…."  Spruill, 175 F.R.D. at 197; Coleman, 306 F. 3d at 1342.  In this case, both documents must be excluded because they lack trustworthiness, and hence, cannot fall within the hearsay exception.

First, Investigator Thomas J. Smith's investigation, on which both the DDOL Determination and the March 18 Letter are based, seriously calls the trustworthiness of the documents into question.  Despite having received a position statement from Acme revealing the results of an internal investigation and identifying potential witnesses, Mr. Smith admitted in his deposition that during the course of his investigation, he did not interview *any* Acme management employees.  Smith Dep., p.12.[2]  In fact, Mr. Smith only spoke with two individuals: Ms. Clancy, who claimed that she had no information on Mrs. Nieves, Id., p. 13, and Ms. Cumberbatch, a close friend of Mrs. Nieves who Mr. Smith had to contact several times in order to reach her.  Id., p. 14, 16.  Mr. Smith's entire Determination and the substance of the March 18 Letter are based on one conversation with Ms. Cumberbatch, notwithstanding the clear availability of Acme's witnesses to him.  Such an incomplete, one-sided investigation renders Mr. Smith's subsequent findings unreliable.[3]  Additionally, the DDOL conducted no hearing before issuing its Determination.  In a Rule 803(8)(C) analysis, the DDOL indeed lacks "special skill or experience" in this case sufficient to render its findings untrustworthy.

Further, the District Court has the discretion to apply factors such as prejudice and delay to exclude evidence.  In Coleman, the Court of Appeals affirmed the exclusion of the EEOC determination based on an analysis that its low probative value was outweighed by the

---

[2] The relevant portions of Mr. Smith's deposition are attached as Ex. D.
[3] Further, a mere four days before Mr. Smith decided to issue a Cause Finding in his investigation, he sent a letter to Mrs. Nieves indicating "it is not possible to issue a cause finding in this matter."  March 14, 2005 letter, Ex. E.

undue delay that would have been involved in rebutting that determination.  Coleman, 306 F. 3d at 1347; see also Whitfield v. Pathmark Stores, Inc., No. CIV.A. 96-246-MMS, 1999 WL 222459, at *4 (D. Del. 1999).  Here, both the DDOL Determination and the supporting March 18 Letter must be excluded because they fail under a Rule 403 balancing analysis.

As a threshold matter, admitting conclusions and opinions by a federal or state agency is "tantamount to saying 'this has already been decided and here is the decision.'" Whitfield, 1999 WL 222459, at *4.  The DDOL Determination states that it was "confirmed that Charging Party was harassed by these individuals because of her national origin." Determination, Exhibit B.  By drawing such a conclusion, the DDOL Determination is likely to confuse the jurors and hence, be highly prejudicial against Acme.  Indeed, the jurors are asked to draw the same conclusions the agency already decided.  Such a high likelihood of prejudice renders the Determination inadmissible under a Rule 403 balancing analysis.  See  Coleman, 306 F.3d at 1347.  Further, the DDOL's findings as described in its March 18 Letter are not even in accord with Mrs. Nieves' account of events as set forth in the established record.  For example, the March 18 Letter indicates that Ms. Cumberbatch stated that co-workers often called Mrs. Nieves "Little Chihuahua."   Nowhere in Mrs. Nieves' deposition does she testify that this occurred, although she was asked for all incidents she thought contributed to an alleged racially hostile environment.  Further, Ms. Cumberbatch testifies throughout her deposition that incidents she recounted were based on "rumor" and "word of mouth."  Cumberbatch Dep., p. 23, 47-48. [4] Mr. Smith ignored Acme's position statement and easily accessible witnesses, and relied on one witness' unreliable comments.  As in Coleman, the low probative value of the March 18 Letter is outweighed by the undue delay and prejudice that would be involved in Acme rebutting the different parts of that letter.

---

[4] The relevant portions of Ms. Cumberbatch's deposition are attached as Ex. F.

The DDOL claimed, and this Court upheld in a discovery motion, that the

decision-making process in arriving at its conclusions was privileged.   Hence, neither the DDOL

nor Mr. Smith can be examined on the investigatory process and findings.   Thus, admitting these

documents (with an explanation of the privilege issues) would increase confusion to the jury and

would certainly prejudice Acme.

## V.    <u>CONCLUSION</u>

Based on any and all of the above-stated reasons, defendant Acme Markets, Inc.

respectfully requests that its Motion in Limine be granted, and plaintiffs Gloria Nieves and

Emilio Nieves be precluded from introducing the DDOL's Determination and the March 18

Letter during the course of the trial of this case.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

JENNIFER M. BECNEL-GUZZO (No. 4492)
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
jennifer.becnelguzzo@bipc.com

and

ELIZABETH A. MALLOY *(admitted pro hac vice)*
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street
14th Floor
Philadelphia, PA  19103
(215) 665-8700

Dated:  May 22, 2007          *Attorneys for Defendant, Acme Markets, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GLORIA NIEVES and EMILIO NIEVES, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Number:  06-123 (GMS) |
| ACME MARKETS, INC., a Delaware corporation | : | |
| d/b/a Acme Markets No. 7816, ACME MARKETS, | : | JURY TRIAL DEMANDED |
| INC., a Delaware Corporation d/b/a Acme Markets | : | |
| No. 7836, ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation, d/b/a Acme Markets No. 7816, | : | |
| ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation d/b/a Acme Markets No. 7836, | : | |
| | : | |
| Defendants. | : | |

**APPENDIX TO DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION IN LIMINE TO EXCLUDE THE DDOL'S MARCH 18, 2005 LETTER
TO DEFENDANT AND FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

JENNIFER M. BECNEL-GUZZO (No. 4492)
BUCHANAN INGERSOLL & ROONEY PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
(302) 552-4295 (facsimile)
jennifer.becnelguzzo@bipc.com

and

ELIZABETH A. MALLOY *(admitted pro hac vice)*
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street
14th Floor
Philadelphia, PA  19103
(215) 665-8700

Attorneys for Defendant,
Acme Markets, Inc.

Dated:  May 22, 2007

## APPENDIX TABLE OF CONTENTS

<u>TAB</u>

EXHIBIT A          March 18, 2005 Letter from Delaware Department of Labor ...... A-1 - A-3

EXHIBIT B          Delaware Department of Labor Determination ............................ A-4 – A-6

EXHIBIT C          Decisions Not Reported in Official Reporters............................... A-7 – A-19

EXHIBIT D          Relevant Portions of Deposition of Thomas J. Smith .................. A-20 – A-25

EXHIBIT E          March 14, 2005 Letter from Delaware Department of Labor ...... A-26 – A-27

EXHIBIT F          Relevant Portions of Deposition of Amanda Lea
                   Cumberbatch.................................................................................. A-28 – A-32

# EXHIBIT A



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

*Winner, Delaware Quality Award of Merit*

TELEPHONE (302) 761-8200
FAX (302) 761-6601

March 18, 2005

Acme Supermarkets
75 Valley Stream Parkway
Malvern, PA 19355
Attn: Tamara Marshall

VIA FACSIMILE AND US MAIL

RE:    <u>Nieves v. Acme Markets</u>,
       04040397/17CA400389

Dear Ms. Marshall,

      As you are aware, I have been assigned to the Charge of Discrimination mentioned in the caption above. This letter will serve to inform you that I have very nearly completed my investigation into this matter and that I will most likely be issuing a Cause Finding.

      The Charging Party alleges that she was harassed by her coworkers because she spoke English with a Columbian accent. Also, that at least three of her coworkers would constantly make negative comments to the Charging Party about her national origin. Further, she alleges that these individuals falsely accused her of throwing food and a bucket of mop water in the face of one of these individuals. She also alleged that the store manager told her husband that if he were to come onto the premises, he risked physical harm.

      In the course of my investigation I spoke with a witness that I found to be very credible. This individual was in a position to observe the interactions between the Charging Party and the individuals who were harassing her. Indeed, the harassers at one point attempted to recruit the witness into this behavior.

      This individual stated that the she had not seen this sort of behavior since she was in school. The witness stated that the Charging Party's coworkers would often refer to the Charging Party in a derogatory manner as "Little Chihuahua". Also she stated these individuals looked into the Charging Party's personnel file to see if she had a Green Card. It appears that the only way this could occur was with the permission or tacit consent of management.

      This individual also confirmed the fact that she was instructed by a manager that if Mr. Nieves were to come into the store; the employees were to "hit and subdue him, then call management so they could call the police." One of the striking statements the witness made was that she didn't think things like "this happened anymore." And that what happened to the Charging Party was "like throwing a kitten into a bear pit."

A-2

If you have further information or documentation for my review, I may be reached at 302.761.8214. Regardless, if you do not contact me not later than ten days after the receipt of this letter, I will make a decision in this matter without further input from you.

Regards,

Thomas X. Smith
Labor Law Enforcement Officer

# EXHIBIT B

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION UNIT



Ms. Gloria Nieves                                04040397
626 Village Dr.
Middletown, DE 19709
vs.
Acme Supermarkets
75 Valley Stream Pky.
Malvern, PA 19355
Attn: Tamara Marshall

FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

*Reasonable Cause Determination and Notice of Mandatory Conciliation.*

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred. Under the provisions of the law, the parties are now required to engage in mandatory conciliation with Thomas J. Smith. Please be prepared to appear for conciliation on the following date and time Monday April 18th ,2005 9am at the location of Delaware Dept. of Labor, 4425 N. Market St. Wilmington, DE 19802.

Your cooperation and good faith effort is anticipated. Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts:

Charging Party alleges that coworkers constantly harassed and subjected her to physical threats and name calling because she spoke English with a Spanish accent. She further stated these same individuals deliberately attempted to create circumstances for her termination. Statements from a former coworker confirmed that the Charging Party was harassed by these individuals because of her national origin. Further, when she complained to management, no action was taken to end this behavior.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Unit. See the attached Notice of Rights.

3/31/05
Date issued

Julie K. Cutler, Administrator

4/18/05 - CP failure to attend
Date conciliation completed

Julie K. Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

A-5

DOL Form C-12RC : 12/04

### NOTICE OF DELAWARE RIGHTS

*The Department of Labor Discrimination Unit provides the following excerpt from 19 Del. C. § 710, et seq. as information regarding the Delaware Right to Sue Notice. If you need legal advice, please seek your own legal counsel.*

**§ 714. Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies.**

    (a)    A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

    (b)    The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

    (c)    The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

### NOTICE OF FEDERAL RIGHTS

    1.    If your case was also filed under federal law and resulted in a "No Cause" finding, you have additional appeal rights with the Equal Employment Opportunity Commission. Under Section 1601.76 of EEOC's regulations, you are entitled to request that EEOC perform a Substantial Weight Review of the DDOL's final finding. To obtain this review, you must request it by writing to EEOC within *15 days of your receipt* of DDOL's final finding in your case. Otherwise, EEOC will generally adopt the DDOL's findings.

    2.    If your case was also filed under federal law, you have the right to request a federal Right to Sue Notice from the EEOC. To obtain such a federal Right to Sue Notice, you must make a written request directly to EEOC at the address shown below. Upon its receipt, EEOC will issue you a Notice of Right to Sue and you will have ninety (90) days to file suit. The issuance of a Notice of Right to Sue will normally result in EEOC terminating all further processing.

    3.    Requests to the EEOC should be sent to:

Equal Employment Opportunity Commission
The Bourse, Suite 400
21 S. Fifth Street
Philadelphia, PA 19106-2515

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-13 : 8/04

# EXHIBIT C

Westlaw.

175 F.R.D. 194
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

Page 1

**H**

United States District Court,
D. Delaware.
Joseph D. SPRUILL, Sr., Plaintiff,
v.
WINNER FORD OF DOVER, LTD., a Delaware
corporation, Winner Imports of Dover,
Inc., and Winner Hyundai, Inc., Defendants.
Civ. A. No. 94-685 MMS.

Aug. 14, 1997.

Former employee brought race discrimination action against former employer. On pretrial motions in limine filed by both parties, the District Court, Murray M. Schwartz, Senior District Judge, held that: (1) factual and legal findings of Delaware Department of Labor (DDOL) were inadmissible; (2) former employer was not automatically liable for alleged acts of discrimination by business manager, finance and insurance department manager, or used car manager; (3) probative value of evidence of alleged harassment of coemployees during employee's tenure of employment was not outweighed by considerations of undue delay; (4) letter in which employee's counsel rejected employer's officer of reinstatement was more prejudicial than probative; (5) person who had not been identified in joint pretrial order as potential witness could not be added as witness; and (6) employee would not be required to produce work product in form of statements he had taken from witnesses.

So ordered.

West Headnotes

**[1] Federal Civil Procedure** 🔑**2011**
170Ak2011 Most Cited Cases
Factual findings of Delaware Department of Labor (DDOL), contained in determination of reasonable cause to believe that employee was discriminated against on basis of race, were cumulative and had little relevance in employee's Title VII race discrimination claim, and thus were inadmissible, where employer essentially had admitted such facts. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[2] Evidence** 🔑**146**
157k146 Most Cited Cases
Legal conclusions of Delaware Department of Labor (DDOL), contained in determination of reasonable cause to believe that employee was discriminated against on basis of race, were more prejudicial than probative in Title VII race discrimination claim, and thus were inadmissible; instructing jury on the law was province of court, and admission would confuse jury. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[3] Civil Rights** 🔑**1528**
78k1528 Most Cited Cases
(Formerly 78k371)
Business manager, finance and insurance department manager, and used car manager were not part of "upper echelon" of automobile dealership's management, and dealership thus was not automatically liable under Title VII for their alleged acts of race discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[4] Evidence** 🔑**146**
157k146 Most Cited Cases
Probative value of evidence of alleged harassment of coemployees during employee's tenure of employment was not outweighed by considerations of undue delay resulting from admission of such evidence in employee's Title VII hostile environment race discrimination action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[5] Evidence** 🔑**146**
157k146 Most Cited Cases
Letter in which employee's counsel rejected employer's officer of reinstatement was more prejudicial than probative in Title VII action; counsel's views were irrelevant to employee's reasons for rejecting offer, letter was mere legal posturing, and employee could offer his own testimony as to his reasons for rejecting offer. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[6] Federal Civil Procedure** 🔑**1938.1**
170Ak1938.1 Most Cited Cases
Person who was not identified in joint pretrial order as potential witness could not be added as witness at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 194
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

Page 2

a late date, i.e., after parties had filed pretrial motions in limine.

**[7] Federal Civil Procedure** 🔑1600(3)
170Ak1600(3) Most Cited Cases
Defendant failed to make sufficient showing of substantial need and undue hardship such that plaintiff would be required to produce work product in form of statements he had taken from witnesses with court reporter present; defendant had interviewed one of the witnesses, and was not precluded from taking its own statement from either witness, and possibility that defendant could impeach witnesses did not establish substantial need. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.
*195 Richard R. Weir, Jr., Wilmington, DE, for plaintiff.

Donald E. Reid and Andrea L. Rocanelli, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

Joseph D. Spruill, Sr. ("Spruill") filed a complaint against Winner Ford of Dover, Ltd., Winner Imports of Dover, Inc. and Winner Hyundai, Inc. (collectively "Winner" or "defendants"), claiming race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. [FN1] Jurisdiction is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § § 1331 and 1343. Before the Court are pre-trial motions in limine filed by both parties.

> FN1. Spruill's lawsuit originally named The Winner Group and Winner Group Management, Inc., as defendants and did not name Winner Imports of Dover, Inc. and Winner Hyundai, Inc. The latter two defendants were added, and the former two dismissed, pursuant to a stipulation among the parties. See Docket Item ("D.I.") 47.

### II. Facts

Spruill began work for Winner Ford of Dover in January 1992 as a sales representative. D.I. 1 ¶ 10. He alleges he was subject to a racially hostile work environment culminating in his constructive discharge in May 1993. Id. Spruill, who is African American, asserts Steven Snyder, Winner's Business

Manager in the Finance and Insurance Department, repeatedly made racial slurs toward him, including calling him "chocolate" and "nigger." Id. ¶ 16. Snyder further is claimed to have stated to Spruill, "kiss my hand and say white man is God," and "tell your big lipped sister to suck my d___," among other things. Id. Snyder further made negative comments about Spruill's marriage to a woman who is white. Id. Other managers at Winner are alleged to have participated in the racial harassment of Spruill as well; these managers included Roger Wollaston, who was general manager at Winner until January 1993, and Frank Fitzwater, who took Wollaston's place. Id.

*196 Following his resignation, Spruill filed charges with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). Spruill subsequently received a determination from the DDOL of reasonable cause to believe he was discriminated against on the basis of his race, and a Notice of Right to Sue from the EEOC. D.I. 1, Exh. A, B.

### III. Motions in Limine

The Third Circuit Court of Appeals has approved of pre-trial motions in limine as a method of "narrow[ing] the evidentiary issues for trial and ... eliminat [ing] unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir.1990). In this case, the parties have raised a number of issues for pre-trial resolution: (1) the admissibility of the DDOL determination; (2) Winner's liability for the actions of its "middle managers;" (3) the admissibility of evidence of discrimination against other employees--before, during and after Spruill's employment at Winner; (4) the admissibility of a letter written by Spruill's attorney in response to an offer of reinstatement by Winner; (5) the addition of certain witnesses to the pre-trial order and (6) the production of certain witness statements. These issues will be considered separately below.

### A. DDOL Determination

Spruill seeks to admit the DDOL determination in its entirety, including factual findings as well as conclusions and opinions. D.I. 75, at 12. Winner's opposition is two-fold. First, Winner asserts, the document is hearsay, and does not fall within the exception permitted by Federal Rule of Evidence 803(8)(C). Second, Winner urges the document is inadmissible under Federal Rule of Evidence 403; because it purported to analyze the issue under state

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 194                                                                                      Page 3
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

law, the prejudicial effect of the findings outweighs the probative value.

As noted, Winner's first objection is governed by Rule 803(8)(C), which presents an exception to the hearsay rule. Unless the DDOL findings fall under such an exception, they are inadmissible, as they are out of court statements to be introduced for the truth of the matter asserted therein. *See* Fed.R.Evid. 801. Rule 803(8) provides an exception to the hearsay rule, however, for:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The Supreme Court has interpreted Rule 803(8)(C) to authorize admission of opinions and conclusions as well as factual determinations, contingent upon trustworthiness as well as the general considerations for admissibility such as relevance and prejudice. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). *Beech* is not directly applicable, however; it concerned a report which opined as to the cause of an airplane crash, and the Court specifically reserved the question whether *legal* conclusions would be admissible under Rule 803(8)(C). *Id* at 170 n. 13, 109 S.Ct. at 450 n. 13.

The federal circuit courts of appeals have not treated uniformly the issue of the admissibility of EEOC findings and their state counterparts, *see Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir.1984) (citing cases). One view is such findings are *per se* admissible, while other courts reserve the decision on admissibility to the discretion of the trial judge. *Id.* The Third Circuit Court of Appeals falls within the latter category. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1099 n. 12 (3d Cir.1995); *see also Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir.1977).

White the opinions of the Third Circuit Court of Appeals have not been expansive as to the various grounds for admitting or excluding the reports, opinions from other circuits indicate--as is suggested by the Supreme Court and the rule--that indicia of trustworthiness should guide the determination. *See, e.g., Johnson*, 734 F.2d at 1309; *Abrams v. Lightolier, Inc.*, 702 F.Supp. 509, 512 (D.N.J.1989). However, the Eighth Circuit Court of Appeals in *Johnson* also noted *197 such reports could be ruled inadmissible for several other reasons:

The trial judge correctly may perceive a danger of unfair prejudice to the defendant or properly may consider that time spent by the defendant in exposing the weaknesses of the EEOC report would add unduly to the length of the trial. Moreover, the trial judge properly may give weight to the hearsay nature of the EEOC report and to the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness.
734 F.2d at 1309.

Finally, several courts have distinguished between factual findings on the one hand, and opinions and conclusions contained in these reports on the other hand, and have admitted the former and excluded the latter. *See Starceski*, 54 F.3d at 1099 n. 12 (holding not abuse of discretion for trial court to admit list of employees in plaintiff's department prepared at the request of the EEOC, but excluding the EEOC's determination that the claim lacked probable cause); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F.Supp. 686, 692 (N.D.Ill.1994) (excluding administrative findings but admitting remainder of report).

Winner urges the DDOL determination must be excluded based on insufficient evidence of trustworthiness. It cites *Complaint of Nautilus Motor Tanker Co.*, 85 F.3d 105 (3d Cir.1996), for the proposition that the Court must consider certain factors before admitting the DDOL findings, including:

> (1) the timeliness of the investigation; (2) the investigator's skill and experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation.

85 F.3d at 112 (citing *Beech Aircraft Corp.*, 488 U.S. at 168 n. 11, 109 S.Ct. at 449 n. 11). Winner's position is Spruill has not presented evidence to satisfy these requirements, and therefore has not met his burden of proving the DDOL determination is admissible.

With the record silent as to trustworthiness, the Court is loathe to hold the findings of the DDOL are inadmissible based on lack of trustworthiness, despite general recognition that the quality of these findings may vary. *See Johnson*, 734 F.2d at 1308-09. The Court also does not believe *Nautilus Motor Tanker* necessarily controls, as it did not concern admissibility of EEOC or state department of labor findings. It is not necessary to resolve that issue, however, because the DDOL determination is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 194
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

inadmissible based on relevance and prejudice.

[1] As reiterated by the Supreme Court in *Beech Aircraft Corp*, one prerequisite for admissibility is relevance. 488 U.S. at 167, 109 S.Ct. at 448. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Court finds that the factual findings of the DDOL are not relevant because they are essentially admitted by Winner.

The fact findings of the DDOL echo the statements as detailed above, that Snyder referred to Spruill as "chocolate" and "nigger," made statements that "white man is God," and commented negatively on Spruill's marriage to a white woman. *See* D.I. 76, A8-A10. [FN2] After reviewing the deposition testimony--particularly Snyder's--the Court does not believe these issues are disputed. For example, Snyder testified he used the word chocolate to refer to African Americans and Spruill in particular, A130, A137; that he used the word nigger, although not in conversations with African Americans, A136; that he told Spruill to say "white man is God," A-138; and that he commented negatively on white women who dated African Americans. A-138. Snyder's testimony on these issues evinces his belief these statements were made in jest. A-139. Because the fact findings set forth in the DDOL's report are essentially admitted by Winner, they are cumulative and have limited relevance *198 [ FN3] *Cf Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1218 (3d Cir.1995).

> FN2. The cites beginning with the prefix A refer to the appendix in support of the plaintiff's motion in limine.

> FN3. This discussion of the facts is not exhaustive with respect to every fact detailed by the DDOL or every fact admitted by defendants For purposes of deciding the motion in limine, the Court has focused on some of the more egregious statements.

[2] On the other hand, the Court finds the DDOL's legal conclusions are inadmissible because of their potential prejudicial effect. Federal Rule of Evidence 403 permits the Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." As pointed out, several courts have excluded the opinions or conclusions found in EEOC or state department of labor determinations based on prejudice to the parties. For example, in *Brom*, the court found admission of administrative conclusions were "tantamount to saying 'this has already been decided and here is the decision[.]' " 867 F.Supp. at 692 (quotation omitted)

In this case, DDOL found there is reasonable cause to believe Winner discriminated against Spruill on the basis of race, that Spruill was constructively discharged, and that Winner's actions violated Delaware law. *See* A7-A11. In doing so, the conclusion incorporates several statements of law. *Id* For example, the conclusion states in order for Spruill to prove a hostile work environment, he must "demonstrate that the workplace is permeated with discriminatory behavior such that a reasonable person would find it intolerable." A10. Also, the conclusion states, "Since management is accused of the discriminatory actions, [Spruill] had no obligation to complain to management." A11. Instructing the jury on the law is the province of the Court; admitting such statements would only lead to jury confusion. Accordingly, because the conclusion is extremely prejudicial and also is likely to lead to significant jury confusion, it will not be admitted. [FN4]

> FN4. In so deciding, the Court does not decide whether the conclusion should be excluded merely on the basis it was made under state law, as is argued by Winner.

**B. Winner's Liability for Acts of Middle Managers**

Spruill next asks the Court to "enter an order that the Winner managers are agents of Winner and that Winner is directly liable for the conduct of those managers." D.I 75, at 26. By this, the Court assumes Spruill wishes to bypass the need to present evidence of respondeat superior liability.

The Supreme Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), rejected the notion that "employers are always automatically liable for sexual harassment by their supervisors[,]" and instead directed courts to look to agency principles for guidance in determining employer liability *Id* [FN5] The Third Circuit Court of Appeals expanded upon this principle in *Knabe v. Boury Corp.*, 114 F.3d 407, 411 (3d Cir.1997), where it set forth three avenues for liability under agency principles. First,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 194
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

the court held, an employer could be held liable for the torts of its employees committed within the scope of employment. *Id.* The court quickly disposed of that possibility, holding sexual harassment rarely would fall within the scope of employment. *Id.* Similarly, this Court finds claims of racial harassment would not be within the scope of Winner management's employment. Second, the court held an employer could be held liable for negligent or reckless failure to take action to correct such harassment. *Id.* Finally, the court found employers could be liable if the offending supervisory employee relied on the agency relationship in perpetrating the harassment. *Id.* The court specifically rejected the argument that "respondeat superior liability automatically attaches to the employer when a supervisor, who has the authority to hire, fire, and discipline the victim of the harassment, creates the hostile work environment." *Id.* n. 7.

> FN5. Although *Meritor,* as well as several other cases discussed herein, concerned sexual harassment under Title VII, the principles are equally applicable to a Title VII case alleging racial harassment.

**\*199** The plaintiff in *Knabe* proceeded under the second theory, above, alleging her employer responded negligently or recklessly to her claims of harassment. The court explained: "an employer is liable for an employee's behavior under a negligence theory of agency 'if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a ... hostile work environment and failed to take prompt and adequate remedial action.' " 114 F.3d at 411

Most relevant for purposes of Spruill's motion is the *Knabe* court's unstated assumption that the perpetrator of the harassment--the shift manager of the restaurant where the plaintiff worked--was not a "management-level employee," the named defendant being a corporation which owned at least four restaurants. Thus, it did not consider whether the restaurant manager himself had notice of the alleged harassment. Instead, the court focused on the plaintiff's contact with an individual higher up in the chain of command. There was no discussion in *Knabe* of the possibility that an individual might be harassed by a "management-level employee" such that the employer automatically is deemed to have constructive notice. Other circuit courts of appeals have recently begun to grapple with this issue. *See Torres v. Pisano,* 116 F.3d 625 (2d Cir.1997); *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1446-

47 (10th Cir.1997); *Faragher v. City of Boca Raton,* 111 F.3d 1530, 1535 (11th Cir.1997).

The Court finds helpful the opinion of the Second Circuit Court of Appeals in *Torres,* 116 F.3d 625. In that case, the court distinguished between "low-level supervisors" who would generally be considered "indistinguishable from ... coworkers" in terms of imputing their conduct to the employer, and those employees occupying a position in the company management's "upper echelons." *Id.* at 633-35. Such a distinction seems called for by the Third Circuit Court of Appeals' opinion in *Knabe.*

Winner states in its answering brief that its general manager and sales manager were "management-level employees" based on their authority over Spruill, but that its business manager/"F & I manager" and its used car manager were not, based on the fact they had no supervisory authority over Spruill. D.I. 79, at 5-6. Snyder, the alleged primary perpetrator of the racist comments, was in the latter category. *Id.* at 6.

The Court does not rely on the amount of control these managers had over Spruill, because of the explicit statement of the Third Circuit Court of Appeals rejecting the premise that supervisory authority is a necessary and sufficient condition for respondeat superior liability. *Knabe,* 114 F.3d at 411 n. 7. Instead, the Court focuses on the distinction set forth in *Torres:* only the actions of those in the "upper echelons" of Winner Ford management will be imputed by law to Winner Ford.

[3] Without the need to specifically define the "upper echelons," the Court finds neither the positions of business manager/ "F & I manager," nor used car manager qualifies as the "upper echelon" of Winner management. On the other hand, Winner Ford has conceded and the Court holds the sales manager and general manager are "upper echelon" Winner management. Accordingly, Winner Ford is not automatically liable for the actions of any managers other than its general managers and sales managers and Spruill must therefore prove respondeat superior liability for all acts alleged by the other managers. That burden will be satisfied if Spruill is able to establish at trial by a preponderance of the evidence that either or both Winner Ford's general manager or sales manager had actual or constructive knowledge of a hostile work environment and failed to take prompt and adequate remedial action.

**C. Evidence Concerning Harassment of Other Employees**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

175 F.R.D. 194
175 F.R.D. 194, 74 Fair.Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

Page 6

Under Supreme Court and Third Circuit Court of Appeals precedent, Spruill can establish a Title VII violation based on a racially hostile working environment if he can demonstrate "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." *200 *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996); *accord Knabe*, 114 F.3d at 410 (sexual harassment case). The test utilized by the Third Circuit is:

> (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability
>
> *Aman*, 85 F.3d at 1081.

As part of his claim, Spruill wishes to introduce evidence of harassment of other employees that occurred before, during and after his employment at Winner. Such information will be used to establish "knowledge and intent of Winner, the *animus* of the management, the pervasiveness of the harassment, the credibility of Mr. Spruill and other witnesses to the harassment and discrimination, and the objective and subjective elements of a hostile racial environment claim[.]" D.I. 75, at 27. Winner opposes the introduction of such evidence on the basis it would lengthen the trial and result in "various and sundry mini-trials on facts and issues which are collateral at best." D.I. 79, at 7. Winner urges such evidence is excludable under Federal Rule of Evidence 403, [FN6] on the basis of undue delay.

> FN6. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[4] As the fact-finder must consider the totality of the circumstances in evaluating Spruill's claim of a hostile work environment, it would be unduly restrictive to prohibit Spruill from adducing evidence of discrimination against other employees while Spruill was employed by Winner; such evidence is relevant to his claim. *Stair v. Lehigh Valley Carpenters Local Union*, 813 F.Supp. 1112, 1119

(E.D.Pa.1993). On the other hand, evidence of discrimination that occurred before or after his employ quickly loses its relevance. Without knowing the details of the evidence Spruill wishes to present, and the defenses which may be adduced at a trial, the Court is unable to rule at this time on the admissibility of discrimination at times when Spruill was not an employee.

**D. Spruill's Response to Winner's Offer of Reinstatement**

Plaintiff next asks the Court to hold admissible a letter authored by plaintiff's counsel which was submitted to Winner in response to Winner's letter offering Spruill reinstatement. The letter sets forth plaintiff's counsel's belief that Spruill would not be protected from further racial harassment if he returned to work at Winner; it further communicates Spruill's rejection of the offer. *See* A173. [FN7] Winner opposes admission of the letter on the basis of prejudice and relevance.

> FN7. The letter states, in pertinent part:
> My client contends that he suffered racial discrimination at his employment at Winner Ford. As you also know, Winner Ford has denied that the conduct has taken place and has the same individuals still in management positions.
> I, therefore, believe that the offer does not protect Mr. Spruill from a continuing hostile environment and racially discriminatory actions, conduct, comments, and treatment at Winner Ford and I do not believe that he has an obligation to return so as to cut off Winner Ford's liability for accrual of back pay and front pay, e.g., *Naylor v. Georgia-Pacific*, Civil Action No. 93-3053, [875 F.Supp. 564], (N.D. Iowa, Jan. 31, 1995).
> I have communicated your offer to him and he does not want to return to that working environment that was racially pervasive and discriminatory. He is still undergoing treatment and counseling for the effects visited upon him by the pervasive and racially discriminatory conduct, words and actions at Winner Ford.

Winner likely submitted its offer of reinstatement to reap the benefits of the Supreme Court's holding in *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), that an unconditional offer of reinstatement tolls the accrual of back pay from the date of the offer. The Court so held despite

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

175 F.R.D. 194
175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002
(Cite as: 175 F.R.D. 194)

Page 7

the fact that the offer in *Ford Motor Co* did not include retroactive seniority, on the basis that the unconditional offer sufficiently served the goals of Title *201 VII. The Court hinted that some offers would not satisfy the "unconditional" requirement--it stated, "[A]n applicant or discharged employee is not required to accept a job offered by the employer on the condition that he claims against the employer be compromised." *Id* at 232 n 18, 102 S.Ct. at 3066. Finally, it concluded, "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." 458 U.S. at 241, 102 S.Ct. at 3070.

Some courts have interpreted this last statement by the Court to indicate even an unconditional offer may be rejected without any consequence to backpay liability if sufficient special circumstances exist. *See Giandonato v. Sybron Corp., 804 F.2d 120 (10th Cir.1986)* (citing *Taylor v. Teletype Corp., 648 F.2d 1129 (8th Cir.1981)*). One circumstance that has been recognized is the anticipation of continuing harassment. *Wilcox v. Stratton Lumber, Inc., 921 F.Supp. 837 (D.Me.1996); Naylor v. Georgia-Pacific Corp., 875 F.Supp. 564 (N.D.Iowa 1995).*

[5] Without commenting on the validity of that legal theory, the Court holds the letter is inadmissible based on relevance and prejudice. First, insofar as the views of *plaintiff's counsel* are set forth in the letter, such views are irrelevant to Spruill's reasons for rejecting the offer. It is clear the letter is just so much legal posturing, and need not be accepted as anything more. Second, the plaintiff can offer his own testimony as to his reasons for rejecting the offer, rendering the remainder of the letter cumulative. Accordingly, the letter will not be admitted.

### E. Addition of Witness to Pretrial Statement

[6] The parties disagree as to whether John Hynansky, the owner but not general manager of Winner Ford, may be listed as a witness at trial. Spruill urges Hynansky--who manages Winner Incorporated and Winner Group Management, neither of whom are defendants--has been identified as a person with knowledge of the events at issue, and has been deposed. Winner, on the other hand, states Hynansky has no personal knowledge of the alleged harassment of Spruill, and therefore, Spruill should not be permitted to call him as a witness at trial. Neither party provides more information than this. After reviewing the file, the Court concludes Hynansky was never identified in the joint pretrial

order as a potential witness. *See* D.I. 58. Accordingly, he may not be added at this late date. Spruill's motion will be denied.

### F. Winner's Motion to Compel Production of Witness Statements

Winner asks the Court to order production of two witness statements, or in the alternative, preclude the two witnesses from testifying. One witness is Roger Wollaston, general manager at Winner during Spruill's employment; the other is Anthony Zaccardelli, a sales person at Winner also during Spruill's employment there.

According to Winner, Spruill noticed the deposition of Wollaston, and subsequently asked if Winner would produce him without a subpoena. Winner declined, and there were no further communications between the parties on the issue. Winner assumed the deposition would not go ahead; it did not, but plaintiff took a statement (presumably sworn) with a court reporter present. Winner now wishes to have a copy of the transcript. Plaintiff similarly interviewed Zaccardelli in the presence of a court reporter, and Winner seeks a copy of that transcript as well. Spruill defends on the basis of work product, and, it adds, Winner's request is tardy, coming as it did after the close of discovery.

Putting aside the alleged tardiness of Winner's motion, the Court looks to guidance from Federal Rule of Civil Procedure 26(b)(3), which would govern Winner's motion if made in the discovery context. That rule permits discovery of "documents ... prepared in anticipation of litigation or for trial by or for another party ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

*202 [7] It is undisputed the witness statements at issue were taken in preparation for litigation. Accordingly, at issue is whether Winner has made a sufficient showing of substantial need and undue hardship. The Court finds Winner has not; Winner interviewed Wollaston, *see* D.I. 80, Exh. A, and is not precluded from taking its own *ex parte* statement of either witness with a court reporter present. The only reason Winner advanced for needing these statements is effective impeachment. *See* D.I. 78. That argument is meritless; the possibility of impeachment does not satisfy the showing required

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by Rule 26. _Carson v. Mar-Tee Inc._, 165 F.R.D. 48 (E.D.Pa.1996); _Dingler v. Halcyon Lijn N.V._, 50 F.R.D. 211 (E.D.Pa.1970). Winner's motion will be denied. [FN8]

> FN8. The Court is not persuaded otherwise by _Dobbs v. Lamonts Apparel, Inc._, 155 F.R.D. 650 (D.Alaska 1994), cited by Winner, which held verbatim witness statements were not covered by the work product doctrine. That holding appears contrary to the language of Rule 26(b)(3), which covers "documents ... prepared in anticipation of litigation..." _See_ 8 Charles Alan Wright, Richard L. Marcus, _Federal Practice and Procedure_ § 2024 (2d ed.1994) (discussing application of work product doctrine to witness statements).

175 F.R.D. 194, 74 Fair Empl.Prac.Cas. (BNA) 1649, 39 Fed.R.Serv.3d 1002

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222459 (D.Del.)
(Cite as: 1999 WL 222459 (D.Del.))

▷
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Sharon WHITFIELD, Plaintiff,
v.
PATHMARK STORES, INC., Defendant.
No. CIV.A. 96-246-MMS.

March 30, 1999.

Teresa C. Fariss, Esq., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; attorney for plaintiff.

Susan G. Harron, Esq., of White and Williams LLP, Wilmington, Delaware; Of Counsel: Michael F. Kraemer, Esq., of White and Williams LLP, Philadelphia, Pennsylvania; attorneys for defendant.

MEMORANDUM OPINION

SCHWARTZ, Senior District J.

*1 Sharon Whitfield ("Whitfield") filed this complaint against Pathmark Stores, Inc. ("Pathmark") alleging violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111 et seq. She alleges she was a qualified individual with a disability and Pathmark discriminated against her because of her disability. She further alleges Pathmark retaliated against her for engaging in protected activity under the ADA. A jury trial of the matter has been scheduled beginning May 10, 1999. Before the Court are three [FN1] pre-trial motions in limine from Defendant.

I. FACTS

The relevant facts are simple. [FN2] Whitfield had been employed by Pathmark since 1981, when in 1992 and 1993 she was in two successive automobile accidents injuring her back. After some time away from Pathmark, she returned to work in October 1993 with several doctor's restrictions. When she informed Pathmark her injuries were permanent, she was taken off the work schedule on February 11, 1994.

Whitfield filed a disability discrimination charge against Pathmark with the Delaware Department of Labor ("DDOL") on April 27, 1994. [FN3] On May 7, 1994, she returned to work at Pathmark with a note

reiterating her medical limitations. When she returned, she was placed on an assignment which included activities she believed were not within her limitations. She asked to be returned to the job she had held immediately after returning from her accident. After Whitfield performed the new job and experienced an aggravation of her symptoms, she provided Pathmark with a doctor's note. She was again taken off the work schedule May 21, 1994.

A series of negotiations regarding a possible return to work in keeping with her medical restrictions followed. These meetings, however, were to no avail, and Whitfield remained off the schedule at Pathmark.

On April 28, 1995, the Delaware Department of Labor issued a decision finding probable cause to believe Pathmark had discriminated against Whitfield. The EEOC issued Whitfield a "Notice of a Right to Sue" on April 19, 1996. On May 1, 1996, Pathmark terminated Whitfield. She instituted this suit on May 13, 1996.

II. DISCUSSION

"The Third Circuit Court of Appeals has approved of pre-trial motions in limine as a method of 'narrow[ing] the evidentiary issues for trial and ... eliminat[ing] unnecessary trial interruptions." ' Spruill v. Winner Ford of Dover, Ltd., 175 F.R.D. 194, 196 (D.Del.1997) (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir.1990)) Pathmark moves to prevent Whitfield from introducing at trial three different types of evidence: (1) evidence of future wage loss, D.I. 106; (2) evidence "concerning or pertaining to the Delaware Department of Labor investigation of plaintiff's disability discrimination charge and subsequent determination," D.I. 107; and (3) evidence of wage loss after June 16, 1994, D.I. 108. A separate discussion of each motion follows.

A. Evidence of Future Wage Loss

*2 Pathmark seeks to exclude evidence of future wage loss. It argues that because Whitfield has asked for reinstatement, the legally preferred remedy, she is not entitled to the alternative remedy of future wages. The Court will deny the motion.

The Third Circuit Court of Appeals has made plain that absent circumstances in which reinstatement is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222459 (D.Del.)
(Cite as: 1999 WL 222459 (D.Del.))

not feasible, back pay with reinstatement is the preferred remedy in a case such as this. *E.g., Starceski v. Westinghouse Electric Corp., 54 F.3d 1089, 1103 (3d Cir.1995); Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 831-32 (3d Cir.1995).* Here, Whitfield not only includes reinstatement in her prayer for damages [FN4], but she also testified in her deposition that she was seeking reinstatement to active employment at Pathmark, D.I. 106, Exh. B ("I want my job back."). It is clear, therefore, that Whitfield is seeking reinstatement.

Whitfield argues, however, that after trial the Court may decide reinstatement is inappropriate in this case because 1) no comparable employment would be available; and 2) a history of hostility exists in the workplace. *See, e.g., Starceski, 54 F.3d at 1103 (3d Cir.1995)* (listing grounds for granting front pay rather than reinstatement); *Maxfield v. Sinclair International, 766 F.2d 788, 796 (3d Cir.1985)* ("There may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable."). Pathmark notes that it "does not argue that it cannot reinstate plaintiff, if ordered to do so by this Court." [FN5] D.I. 106, ¶ 10.

The Third Circuit Court of Appeals has explicitly explained that "[s]ince reinstatement is an equitable remedy, it is the district court that should decide whether reinstatement is feasible[,] .... [but] the amount of damages available as front pay is a jury question." *Maxfield, 766 F.2d at 796 (3d Cir.1985).* It has further noted,

[T]he preferable course for a plaintiff seeking the equitable remedy of reinstatement is for such a plaintiff to ask for a jury interrogatory concerning the amount of damages attributable to front-pay in order to avoid a double recovery. In the future, we may require such a practice in order to preserve a claim for reinstatement.

*Squires v. Bonser, 54 F.3d 168, 176 n. 16 (3d Cir.1995)* (outlining the preferred practice when dealing with the alternative remedies of reinstatement and front pay). Other cases have also ratified this approach. *Starceski, 54 F.3d at 1103* (discussing presence of jury instructions on front pay); *Anastasio v. Schering Corp., 838 F.2d 701, 708-710* (analyzing *jury* calculation of front pay for reasonableness). Thus, the Court, if Pathmark is found to have unlawfully discriminated or retaliated against Whitfield, will be asked to determine if reinstatement is appropriate. The Court declines, without a full

presentation on the reinstatement issue, to preclude the possibility that front pay damages may be warranted. *See Feldman, 43 F.3d at 832* (describing approvingly trial court's practice of deferring issue of availability of front pay until after presentation of evidence and then determining whether issue of front pay damages should be put to the jury). The Court therefore denies Pathmark's motion to exclude evidence of front pay damages.

### B. DDOL Investigation and Determination

*3 Pathmark requests the Court exclude both the factual and legal findings of the DDOL's Determination, all testimony regarding the determination and all evidence concerning the DDOL investigation of Whitfield's charges. The Court will grant Pathmark's motion as to the Determination itself and any testimony regarding the Determination, but will reserve decision as to any evidence concerning the DDOL investigation, including the contents of the DDOL file, until Whitfield seeks to introduce them at trial.

Pathmark argues the Determination must be excluded as hearsay evidence because it is an out of court statement being "offered for the truth of the matter asserted." Fed.R.Evid. 801(c). It further argues that the exception to the hearsay rule embodied in Federal Rule of Evidence 803(8)(C) which permits admission of

[r]ecords, reports, statemetns, or data comilations, in any form, of pulic offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authoirty granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In determining the admissibility of documents under this exception, this Court has previously held that the trustiworthiness of the information is the primary factor to be considered. *Spruill v. Winner Ford of Dover, Ltd., 175 F.R.D. 194, 196 (D.Del.1997).* However, as this Court noted, "With the record silent as to trustworthiness, the Court is loathe to hold the findings of the DDOL are inadmissible based on lack of trustworthiness, despite gereral recognition that the quality of these findings may vary." [FN6] *Id.* at 197. However, because the Court finds that the Determination is inadmissible on other grounds, it need not further consider this issue.

Neither the factual findings nor the legal findings in the Determination are admissible under the Federal Rules of Evidence. The facutal findings are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222459 (D.Del.)
(Cite as: 1999 WL 222459 (D.Del.))

inadmissible because they are unnecessarily cumulative. Under the Federal Rules of Evidence, "all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court ...." Fed.R.Evid. 402; see also Beech Aircraft v. Rainey, 488 U.S. 153, 168 (1988) (noting that relevance requirements of the Federal Rules of Evidence further limit the admissibility official reports) Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the aciton more probably or less probably than it would be without the evidence." Fed.R.Evid. 401.

The factual findings of the determination clearly echo the facts for which this Court has, in previous opinions, found supporting evidence. After Whitfield's return from work after a back injury, when her doctor provided Pathmark a note indicating her limitations were permanent, she was taken off the work schedule in February 1994. She returned to work on May 7, 1994, but experienced problems with her back doing the work assigned to her. She was taken off the work schedule again on May 21, 1994. Because the facts outlined in the DDOL report are duplicative of undisputed facts, they are cumulative and therefore have little relevance. [FN7] Spruill, 175 F.R.D. at 197. Therefore, the factual findings of the DDOL Determination will not be admitted at trial.

*4 The legal findings of the Determination are likewise inadmissible because they could have a highly prejudicial effect. Federal Rule of Evidence 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As this Court has previously noted, several courts have excluded such opinions or conclusions by the EEOC because of the prejudice it might have toward one of the parties. Id at 198. Indeed, in Brom v. Bozell, Jacobs, Kenyon & Eckhardt, 867 F.Supp. 686 (N.D.Ill.1994), the Court noted noted that admitting such administrative conclusions were "tantamount to saying 'this has already been decided and her is the decision[.]" ' Id. at 692 (quotation omitted). Id. at 692.

In this case, the DDOL Determination makes several conclusions of law. For example, the Determination states "Respondent failed to provide a valid reason for taking Charging party off the schedule,"

"Respondent discriminated against Charging party," and "failed to accomodate." Furthermore, the Determination assumes Whitfield has a disability, a conclusion this Court has declined to make as a matter of law. By drawing this conclusion, the Determination has the potential to confuse the jurors and would be highly prejudicial against Pathmark since it draws many of the same conslusions the jury will be asked to draw. Therefore, the Conclusion of the Determination is also inadmissible. Similarly, any testimony regarding the DDOL Determination will likewise be excluded.

Pathmark also seeks to exclude all evidence concerning the DDOL investigation, including all materials submitted by Pathmark to the DDOL as part of the investigation. However, neither party has apprised the Court of the contents of the investigative file. That file could contain relevant evidence or impeachment evidence, which, if otherwise admissible, should not be excluded. Without further knowledge of the contents of the investigative file, the Court cannot rule upon the admissibility of any one item in the investigative file. However, counsel are advised not to mention before the jury any evidence in the investigative file without first requesting a bench conference and obtaining a ruling and not to mention the contents of the DDOL investigative file during opening argument.

C. Wage Loss After June 16, 1994

This particular motion in limine borders on the frivolous Pathmark requests this Court to exclude all evidence of wage loss after June 16, 1994, on the ground that Whitfield failed to accept an unconditional offer of reinstatement by Pathmark on that date. D.I. 108. While it is true that under the Supreme Court's holding in Ford Motor Co. v. EEOC, 458 U.S. 219 (1982), failure to accept an unconditional offer of reinstatement tolls accrual of back pay from the date of the offer, Pathmark has not come anywhere close to showing uncontroverted evidence of an unconditional offer of reinstatement.

*5 Pathmark relies on a letter dated June 16, 1994, memorializing a meeting on June 8, 1994, where, according to the letter, Pathmark agreed to all the terms set forth by Whitfield and offered to return her to work immediately. D.I. 108, Exh. A. However, Whitfield argues the offer at this meeting, far from being unconditional, was conditioned upon her withdrawing the charges she had filed with the EEOC and DDOL. Indeed, Richard McGinley, the Director of Associate Relations at Pathmark, testified the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 222459 (D.Del.)
(Cite as: 1999 WL 222459 (D.Del.))

terms of Whitfield's reinstatement were included on a sheet of paper given to her at the June 8, 1994, meeting and marked as an exhibit in his deposition. D.I. 114, Exh. A at 90, 92. Indeed, that exhibit states, in handwriting at the bottom, "EEOC/Del DOL disability charges to be withdrawn." D.I. 114, Exh. B. The Court cannot, therefore, conclude Pathmark gave Whitfield an unconditional offer of employment precluding her from seeking back pay after that date. *See also Whitfield v. Pathmark*, No. Civ. A. 96-246, 1998 WL 372313, at *3 (D. Del. June 22, 1998) (reciting as a fact in a summary judgment opinion that "Pathmark's proposal required that Whitfield drop her disability discrimination charge.") The Court therefore will deny Pathmark's motion to exclude evidence of wage loss after June 16, 1994.

### III. CONCLUSION

Therefore, the Court will deny Pathmark's motion to exclude evidence of future wage loss. Pathmark's motion to exclue evidence of the DDOL investigation will be granted with respect to the DDOL Determination in its entirety, but judgment is reserved as it relates to evidence of the DDOL investigation. Finally, Pathmark's motion to exclude evidence of wage loss after June 16, 1994, will be denied.

FN1. Pathmark has informed the Court by letter that it no longer intends to pursue a fourth motion in limine, D.I. 109, in light of this Court's March 12, 1999, decision in this case reinstating Whitfield's discrimination claim, ___ F.Supp.2d ___ (D.Del. March 12, 1999).

FN2. The Court has twice outlined more fully the facts underlying this matter in two summary judgment opinions. *Whitfield v. Pathmark Stores, Inc.*, No. Civ. A. 96-246 MMS, 1998 WL 372313 (D. Del. June 22, 1998); *Whitfield v. Pathmark Stores, Inc.*, 971 F.Supp. 851 (D.Del.1997), *vacated in part by*, ___ F.Supp.2d ___ (D.Del. March 12, 1999).

FN3. Whitfield's attorney, Richard Zappa ("Zappa") later gave Pathmark notice of the complaint.

FN4. This alone is not conclusive since the the Third Circuit Court of Appeals has held that a plaintiff who does not request reinstatement cannot claim damages in the form of frontpay, since front pay is in lieu of reinstatement *Wehr v. Burroughs Corp.*, 619 F.2d 276 (1980); *but see Maxfield v. Sinclair International*, 766 F.2d 788, 796 (3d Cir.1984) (where plaintiff specifically prayed for front pay and did not specifically disavow desire for reinstatement, front pay not waived).

FN5. The Court notes that the principal of judicial estoppel will bind Pathmark from later asserting a different position in bad faith. *E.g. Stairmaster Sports/Medical Products, Inc. v. Groupe Procycle, Inc.*, 25 F.Supp.2d 270, 280 (D.Del.1998) (holding party to patent litigation was judicially estopped from asserting position inconsistent with position taken at *Markman* proceedings).

FN6. While Pathmark suggests that the Determination is untrustworthy because it assumes Whitfield is disabled. However, this alone, does not render the report untrustworthy, particularly since the Court has recently held that whether Whitfield is disabled is an issue for the jury. ___ F.Supp.2d ___ (D.Del. March 12, 1999).

FN7. This discussion of the facts is not exhaustive with respect to every fact detailed by the DDOL or undisputed in this matter. For purposes of deciding this motion in limine, the Court has focused on the "meat" of the Determination.

Not Reported in F.Supp.2d, 1999 WL 222459 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GLORIA NIEVES & EMILIO NIEVES,  )
                                )
            Plaintiff,          )
                                )  Civil Action
v.                              )  No. 06-123 (GMS)
                                )
ACME MARKETS, INC., a Delaware  )
Corporation d/b/a Acme Markets  )
No. 781, ACME MARKETS, INC., a  )
Delaware Corporation d/b/a Acme )
Markets No. 7836, ACME MARKETS, )
INC., a Pennsylvania Corporation )
d/b/a Acme Markets No. 7816, ACME )
MARKETS, INC., a Pennsylvania   )
Corporation d/b/a Acme Markets  )
No. 7836,                       )
                                )
            Defendants.         )

            Deposition of THOMAS J. SMITH taken
pursuant to notice at the law offices of Buchanan,
Ingersoll & Rooney, 1000 West Street, Suite 1410,
Brandywine Building, Wilmington, Delaware, beginning
at 10:00 a.m. on Thursday, March 1, 2007, before
Christina M. Vitale, Certified Shorthand Reporter and
Notary Public.

APPEARANCES:

        PHILIP B. BARTOSHESKY, ESQUIRE
        BIGGS & BATTAGLIA
          1206 Farmers Bank Building
          Wilmington, Delaware  19899
          For the Plaintiff

Continued. . . . . . .

            WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
                (302) 655-0477

            www.wilfet.com                    A-21



**WILCOX & FETZER LTD.**
Registered Professional Reporters

Thomas J. Smith

12

1    A.    That's correct.

2    Q.    Does the Department of Labor require the

3    respondent to submit their response to the charge?

4    A.    No.

5    Q.    Is the respondent typically requested to submit

6    a response to the charge?

7    A.    Yes.

8              MS. MALLOY:  Please mark this.

9              (Smith Deposition Exhibit No. 3 was marked

10   for identification.)

11   BY MS. MALLOY:

12   Q.    Exhibit 3 is a multiple page document that

13   begins with a fax cover sheet, dated June 25th, '04,

14   to Julie Cutler from Stacy Slate.  Is this a document

15   that was in your file?

16   A.    Yes.

17   Q.    Did you ever interview any Acme management

18   employees in the course of your investigation?

19   A.    No.

20   Q.    You had made a reference to Exhibit 2, which is

21   the March 14th letter.  Is this a letter that you

22   would typically do to a charging party in the course

23   of an investigation?

24   A.    Yes.                                    A-22



Thomas J. Smith

13

1    Q.    The fourth paragraph said that you had

2  contacted one individual.  Who was that that you had

3  spoken to as referenced in this letter?

4    A.    I believe the individual her name was Clancy or

5  Richardson.  She got married and her married name was

6  Richardson.  I can't recall her first name.

7    Q.    What did Ms. Clancy tell you?

8    A.    She told me that she didn't have any particular

9  information regarding Ms. Nieves' allegations since

10 she was not in a position to observe her.

11   Q.    Was that a telephone call with Ms. Clancy?

12   A.    That was a telephone call.

13   Q.    Did you make any notes of that telephone call?

14   A.    Yes, it's a routine practice regarding witness

15 contacts we develop our notes and that sort of thing.

16   Q.    You testified that Ms. Nieves contacted you

17 after she received the March 14th letter, which is

18 Exhibit 2, is that correct?

19   A.    That is correct.

20   Q.    What do you remember about that conversation

21 with her?

22   A.    We spoke generally about the -- her allegations

23 and the results of my investigation at that time.

24   Q.    Did she ask you to contact anyone else?

A-23

Thomas J. Smith

14

1    A.    Yes, she did.

2    Q.    Who did she tell you to call?

3    A.    She asked me to contact an individual by the

4    name of Amanda Cumberbatch.

5    Q.    The March 14th letter references in Paragraph

6    Four that there was someone else that you had

7    contacted and left several messages.  Do you know who

8    that person was?

9    A.    That was Ms. Cumberbatch.

10    Q.    Did you ever speak to Ms. Cumberbatch?

11    A.    Yes, I did.

12    Q.    Did she call you or did you call her?

13    A.    I called her, I believe.

14    Q.    What do you remember about that telephone call?

15    A.    I spoke to her about the case and she gave me

16    information that tended to corroborate Ms. Nieves'

17    allegations.

18    Q.    Do you remember what information she gave you?

19    A.    She said that she was in a position to observe

20    the charging party while she was at work as well as

21    the individuals that she was working with.  She

22    basically said that she could view the treatment that

23    she was being given at work by three of her

24    co-workers.

A-24

**WILCOX & FETZER LTD.**
Registered Professional Reporters

Thomas J. Smith

16

1    just include the facts.  Their impressions are along

2    with those notes.

3    BY MS. MALLOY:

4      Q.   Did you only speak to Ms. Cumberbatch once?

5      A.   Yes.

6      Q.   Other than Ms. Cumberbatch and Ms. Clancy did

7    you speak to anyone else about Ms. Nieves' charge?

8      A.   No.

9      Q.   No?

10     A.   No.

11     Q.   What process did you follow after you spoke to

12   Ms. Cumberbatch?

13     A.   After I spoke to Ms. Cumberbatch I believe I

14   prepared and drafted a letter to the respondent.

15     Q.   What was the process after that?

16     A.   Again, this is part of the process of our

17   agency that we inform the employer if we are preparing

18   to issue a cause finding, a reasonable cause

19   determination.

20          MS. MALLOY:  Please mark this.

21          (Smith Deposition Exhibit No. 4 was marked

22   for identification.)

23   BY MS. MALLOY:

24     Q.   Exhibit 4 is a letter, dated March 18, 2005.

# EXHIBIT E



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

March 14, 2005

Ms. Gloria Nieves
625 Village Dr.
Middletown, DE 19709

*Winner, Delaware Quality Award of Merit*

RE:   Nieves v. Acme Supermarkets,
       04040397/17CA400389

Dear Ms. Nieves,

As you are aware, I have been assigned to the Charge of Discrimination mentioned in the caption above. This letter will serve to inform you of the Respondent's position, of the information gathered thus far, and to afford you the opportunity to give a response if you so choose.

You allege you were discriminated against because of your national origin and the fact you speak English with a Spanish accent. You specifically allege that former coworkers would harass you and threaten members of your family with harm. Further, you state that after you brought your concerns to the Respondent, they took no meaningful action.

The Respondent denies your allegations. They state that after you brought your concerns to them, they conducted an investigation into the matter, and decided to suspend and later transfer you because of your conduct. Also, your labor union did not raise any objections to the discipline you were given.

In the course of my inquiry into this matter I have contacted one individual and left several messages that went unreturned by another. The one individual I spoke with did not corroborate your allegations.

Based on the information in the record it is not possible to issue a cause finding in this matter. If you have further information, documents, or witness statements, please submit them to me not later than ten days after the receipt of this notice. If you fail to do so, a decision will be made in this case without further input from you. I may be contacted at the address above, or via telephone at 302.761.8214.

Regards,

Thomas J. Smith
Labor Law Enforcement Officer

A-27



# EXHIBIT F

Amanda Lea Cumberbatch

1

```
 1              Cumberbatch
 2
 3
 4
 5
 6     IN THE UNITED STATES DISTRICT COURT
 7        FOR THE DISTRICT OF DELAWARE
 8
       GLORIA NIEVES and    : CIVIL ACTION
 9     EMILIO NIEVES        :
                            :
10          vs.            :
                            :
11     ACME MARKETS, INC., a :
       Delaware Corporation, :
12     et al.               : NO. 06-123-GMS
13
14
                    ---
15           January 24, 2007
            Wilmington, Delaware
16                  ---
17
18      Oral deposition of AMANDA LEA CUMBERBATCH,
       taken in the offices of Buchanan, Ingersoll &
19     Rooney, 1000 North West Street, on the above date,
       commencing at 11:03 a.m., before Janice M. Leaman,
20     a Notary Public and Approved Reporter of the
       United States District Court for the Eastern
21     District of Pennsylvania.
                    ---
22
23
            KAPLAN, LEAMAN & WOLFE
24       Registered Professional Reporters
          325 Chestnut Street, Suite 909
25       Philadelphia, Pennsylvania 19106
                (215) 922-7112
```

Amanda Lea Cumberbatch

```
 1                    Cumberbatch
 2   job.
 3                When she went out to go look for a
 4   job, she started getting problems that no one
 5   really wanted to take her application or anything
 6   like that.   And we found out that Michelle had
 7   been going around to these people telling her that
 8   she was illegal alien, she -- I think she called
 9   you a drug addict, too.   I think I remember that
10   one.   Stuff like that.   Oh, yes, that's right,
11   because she's from Colombia, so she's bringing
12   drugs through here and stuff like that.   Yes,
13   there was all kinds of stuff like that.
14        Q.     How do you know that Michelle went to
15   local businesses?   How did you learn that?
16        A.     Word of mouth.   And like I said,
17   that's all they do is talk and talk and talk, and
18   you know everything.   And nine times out of ten,
19   if you ever confronted Michelle about anything
20   that she said, she would agree to it, because she
21   never cared.
22        Q.     Did you personally talk to Michelle
23   about whether she went to any local businesses?
24        A.     No, I didn't.   I tried to stay away
25   from her as much as possible, she was just a
```

Amanda Lea Cumberbatch

```
 1                    Cumberbatch
 2    have worked.    So --
 3        Q.     Do you know whether any of these
 4    coworkers in the deli ever looked in Mrs. Nieves'
 5    personnel file?
 6        A.     I heard a rumor, but I don't know.
 7        Q.     What rumor did you hear?
 8        A.     I heard a rumor that they were looking
 9    up places she's lived and checking for her green
10    card information to see if Michelle's thing was
11    true or not, but I didn't see that, and I don't
12    know for a fact.    I wouldn't doubt it, but I
13    mean, I'm seriously not going to put it past them,
14    but I don't know for sure.    I don't have proof of
15    that at all.
16        Q.     Who did you hear the rumor from?
17        A.     That would be the talk again going
18    through the deli, that's multiple people.    The
19    girl that talked the most was a skinny girl with
20    the short hair.    She had a loud mouth, you heard
21    a lot out of her.    Nancy said a lot, and then --
22    it was pretty much those two most of the time,
23    they were like the ring leaders, and Michelle.
24    It's just word of mouth.    You here a little
25    gaggling (sic. )here, little gaggling there and
```

Amanda Lea Cumberbatch

48

| | Cumberbatch |
|---|---|

1               Cumberbatch

2    pick up information on the way.

3         Q.     Do you --

4         A.     It's hard to not hear it because you

5    are standing right there.   You have to.

6         Q.     Do you remember the person who you

7    heard the rumor from that somebody went into Mrs.

8    Nieves' personnel file?

9         A.     No, I do not.   I can just tell you the

10   grouping of people that was around.

11        Q.     Can you place in time when you heard

12   that?

13        A.     No, I can't.

14        Q.     After you left Acme, did you talk to

15   anybody at all about any of the problems that you

16   felt Mrs. Nieves was having?

17        A.     No.   I didn't talk to anybody there.

18   If I ever talked to anybody, it was probably like

19   a hi and good-bye thing, if I was going shopping

20   at Acme.   I didn't talk to any of these people.

21   I never kept in touch with them, nothing.   I

22   wanted nothing to do with them.

23        Q.     Why?

24        A.     I don't like -- I don't have any

25   respect for those people whatsoever for being like

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GLORIA NIEVES and EMILIO NIEVES, | : | CIVIL ACTION |
| | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | Number: 06-123 (GMS) |
| ACME MARKETS, INC., a Delaware corporation | : | |
| d/b/a Acme Markets No. 7816, ACME MARKETS, | : | JURY TRIAL DEMANDED |
| INC., a Delaware Corporation d/b/a Acme Markets | : | |
| No. 7836, ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation, d/b/a Acme Markets No. 7816, | : | |
| ACME MARKETS, INC., a Pennsylvania | : | |
| Corporation d/b/a Acme Markets No. 7836, | : | |
| | : | |
|     Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Jennifer M. Becnel-Guzzo, hereby certify that on May 29, 2007, I electronically

filed Defendant Acme Markets, Inc.'s Motion In Limine to Exclude the DDOL's March 18, 2005

Letter to Defendant and Final Determination and Right to Sue Notice, along with supporting

opening brief with the Clerk of Court using CM/ECF, and also served two copies, via first class

mail, postage prepaid, to:

> Gloria and Emilio Nieves
> 625 Village Drive
> Middletown, Delaware 19709

I further certify that on May 22, 2007, Plaintiff's former counsel, Biggs & Battaglia, received a

copy of Defendant's Motion in Limine and supporting opening brief.

BUCHANAN INGERSOLL & ROONEY PC

BY: _____

Jennifer M. Becnel-Guzzo (#4492)
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
jennifer.becnelguzzo@bipc.com
*Attorneys for Defendant Acme Markets, Inc.*

May 29, 2007